145 F.3d 1095
 98 Cal. Daily Op. Serv. 4219, 98 Daily Journal
D.A.R. 5827
THE SAN REMO HOTEL; Thomas Field; Robert Field; T & R
Investment Corp., Plaintiffs-Appellants,
v.
CITY AND COUNTY OF SAN FRANCISCO, a municipal corporation;
Department of City Planning; Board Of Permit
Appeals; San Francisco Board of
Supervisors, Defendants-Appellees.
 No. 96-16843.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 4, 1997.
Decided June 3, 1998.
 
 Andrew M. Zacks and Paul F. Utrecht, San Francisco, California, for the plaintiffs-appellants.
 Andrew W. Schwartz, Deputy City Attorney, San Francisco, California, for the defendants-appellees.
 Appeal from the United States District Court for the Northern District of California; D. Lowell Jensen, District Judge, Presiding. D.C. No. CV 93-1644 DLJ.
 Before: WOOD,* RYMER, and TASHIMA, Circuit Judges.
 TASHIMA, Circuit Judge:
 
 
 1
 Success is sometimes said to be the father of failure, and this and like cases are before the courts because San Francisco's success in attracting tourists has fathered a failure in an adequate stock of housing for the low income and disadvantaged population of the City. In 1990, the City and County of San Francisco (the "City") revised its Hotel Conversion Ordinance ("HCO") to increase restrictions on the use of hotel rooms for tourists and to increase the expense of converting a hotel room from residential to tourist use. This revised ordinance has triggered several constitutional challenges based on the Takings Clause of the Fifth Amendment. E.g., Golden Gate Hotel Ass'n. v. City and County of San Francisco, 18 F.3d 1482 (9th Cir.1994), on remand, 1994 WL 443666 (N.D.Cal. Aug.2, 1994), aff'd, 76 F.3d 386 (9th Cir.) (Table), cert. denied, --- U.S. ----, 117 S.Ct. 51, 136 L.Ed.2d 15 (1996); Lambert v. City and County of San Francisco, 57 Cal.App.4th 1172, 67 Cal.Rptr.2d 562 (1997), review granted, 71 Cal.Rptr.2d 215, 950 P.2d 59 (Cal.1998). The present case is the latest installment.
 
 
 2
 Due to the procedural complexities of this case and the state law issues that may moot the Takings Clause challenge, we do not resolve the constitutionality of the HCO. Instead, we invoke Pullman abstention[1] and send the plaintiffs to state court. We note also that subsequent to the submission of this case for decision, the California Supreme Court granted hearing in a case involving the constitutionality of the HCO, see Lambert, 57 Cal.App.4th 1172, 67 Cal.Rptr.2d 562, review granted, 71 Cal.Rptr.2d 215, 950 P.2d 59, and it may be that the California Supreme Court's decision will completely vindicate the plaintiffs' claims in state court, making a return to federal court unnecessary.
 
 I. The Statutory Framework
 
 3
 San Francisco has enacted several hotel conversion ordinances in order to stop the depletion of housing for the poor, elderly and disabled. The City conducted a study that revealed that between 1975 and 1979, almost 20 percent of the residential hotel units in the City were lost due to demolition and conversion, and that most of the conversion was from residential to tourist use. HCO § 41.3(d). In 1979, the City enacted its first HCO as a temporary measure, which it later codified as a permanent ordinance in 1981.
 
 
 4
 Under the 1981 HCO, hotel units could be converted to non-residential use only if the owner obtained a permit to convert. The City granted a permit only if the property owner provided relocation assistance to hotel residents and replaced the residential hotel units being converted through one of the following methods: (1) construction of an equal number of replacement units; (2) rehabilitation of an equal number of residential hotel units; or (3) contribution of a fee to the City's Residential Hotel Preservation Fund Account in the amount of 40 percent of the construction costs of the number of units converted (the "in lieu payment"). HCO §§ 41.12 & 41.13.
 
 
 5
 The 1981 HCO defined a "residential unit" as a hotel room occupied by a permanent resident as of September 23, 1979, i.e., the 1981 HCO was an extension of the 1979 moratorium. To determine whether a unit was residential as of September 23, 1979, the City sent surveys to the operators of hotels.
 
 
 6
 In May 1990, the City repealed the 1981 HCO and enacted the 1990 HCO. This new ordinance made four changes from the old law: (1) it prohibited the summer tourist use of residential rooms; (2) it increased the in lieu payment from 40 percent to 80 percent; (3) it added the requirement that any hotel that rents rooms to tourists during the summer must rent the rooms at least 50 percent of the time to permanent residents during the winter; and (4) the new law did not provide for relief on the ground of economic hardship. To ease the effect of the new ordinance, the 1990 HCO allowed hotel owners who applied before May 12, 1990, to pay a 40 percent in lieu fee, instead of the otherwise-required 80 percent fee.
 
 
 7
 Entirely distinct from the HCOs are the City's zoning ordinances. In 1987, the City enacted the North Beach Neighborhood Commercial District zoning ordinance ("zoning law"), which requires conditional use authorization to establish a tourist hotel. Owners who establish a prior non-conforming commercial use are exempt from this requirement of obtaining a conditional use permit. The zoning law borrows the September 23, 1979, classification from the HCO in order to determine what is a residential unit. In other words, a hotel unit that had been mistakenly characterized as residential under the HCO but that in fact was operating commercially as a tourist unit in 1987 would not be said to have a prior non-conforming use under the zoning law, despite the actual use of the unit.
 
 II. The Facts
 
 8
 The plaintiffs are the owners of the San Remo Hotel, as well as the hotel itself; for convenience, we refer to them collectively as "Field." Field bought the San Remo Hotel in 1971, when it was zoned for commercial use and was subject to no restrictions on tourist use. He leased the hotel to Jean Irribarren (not a party) from 1977 to 1983. Irribarren spoke English badly, and when the 1979 survey arrived and asked him to indicate the nature of the hotel units for the new HCO, Irribarren mistakenly indicated that every single one of the hotel's 62 units was residential. Field had no notice or knowledge of this survey, or of Irribarren's responses.
 
 
 9
 In 1984, after the lease to Irribarren expired, Field again began operating the hotel. In his 1984 Annual Unit Usage Report, Field stated that the actual use of the hotel on September 30, 1984, was still as 62 residential units and zero tourist units. He explains this usage report by arguing that the 1981 HCO was not burdensome to comply with, even with the residential designation. In particular, the 1981 HCO allowed for unlimited tourist use of residential rooms from May to October, which are the most profitable months for a tourist hotel.
 
 
 10
 On May 11, 1990, Field applied under the 1990 HCO to convert the 62 residential rooms to tourist use. The City Zoning Administrator objected on the ground that if such a conversion were granted, the hotel would then be operating in violation of the zoning laws. After all, the 1987 zoning law looked back to the September 23, 1979, survey and characterized the hotel as entirely residential. Therefore, even though the hotel had arguably been operating as a tourist hotel when the zoning law was enacted in 1987, it was not considered a prior non-conforming use. In order to satisfy the zoning law, Field had to obtain a conditional use permit, which he has never gotten.[2]
 
 
 11
 Field then filed an application for a conditional use permit, so the hotel would no longer be operating in violation of the zoning law. The Planning Department scheduled a hearing for August 20, 1992, before the City Planning Commission to decide the merits of this application. On August 19, 1992, the Planning Department concluded that the Commission lacked jurisdiction to decide what the hotel's prior zoning status had been, and the parties agreed to continue the hearing until the Zoning Administrator could make such a determination. On September 9, 1992, the Zoning Administrator formally declared that the hotel had not been zoned for commercial use. Therefore, a conditional use permit would be required.
 
 
 12
 Field appealed to the Board of Permit Appeals ("BPA"), arguing that the hotel was already a permitted conditional use or a prior non-conforming use. Field also argued that using the HCO to convert the hotel into a truly residential hotel would be an unconstitutional taking and a denial of equal protection. The BPA rejected this argument and held the hotel bound by the 1979 classification. It concluded that the prior disobedience to the 1987 zoning law was not a prior non-conforming use but a special exception allowed (but no longer) by the Zoning Administrator. Thus, the BPA held that Field was required to get a conditional use permit.
 
 
 13
 The case then went back to the Planning Commission, which on January 21, 1993, approved Field's application for a conditional use permit, provided: (1) Field paid 40 percent of the cost of replacement housing to make up for the loss of the 62 residential units; (2) Field offered lifetime leases to existing long-term tenants; and (3) Field fulfilled other minor conditions.[3] The BPA affirmed.
 
 
 14
 On March 12, 1993, Field filed a petition for administrative mandamus in state court, challenging the BPA's decision that classified the hotel as residential. This mandamus action has been stayed by stipulation of the parties.
 
 
 15
 On April 19, 1993, the City's Board of Supervisors rejected Field's appeal of the Planning Commission's decision and upheld the conditions for the conditional use permit.
 
 
 16
 On May 4, 1993, Field filed this action against the City under 42 U.S.C. § 1983. Counts one and two of the amended complaint sought declaratory and injunctive relief from condition # 1 (the 40 percent fee) that the Planning Commission set for awarding the conditional use permit. Field alleged that this condition denied him procedural due process and substantive due process. Counts three and four alleged that the 1990 HCO was a facial and as-applied taking under the Fifth Amendment. Count five sought damages based on the above claims. Count six was a supplemental state law claim under the California Permit Streamlining Act.
 
 
 17
 On August 27, 1996, the district court granted the City summary judgment. The court ruled against Field on counts one and two on the grounds that procedural due process does not apply to statutes that apply to more than a few people, and that the substantive due process claim was barred by our decision in Armendariz v. Penman, 75 F.3d 1311 (9th Cir.1996). It also refused to let Field amend his complaint to state an equal protection claim, reasoning that amendment would be futile because any such claim would be precluded by the BPA's decision.
 
 
 18
 The court found that count three was invalid because Field failed to meet the statute of limitations, and that count four was invalid because the claim was unripe. It held count five meritless because it was derivative of the first four counts, and it dismissed count six.
 
 
 19
 Field appeals, but he has dropped his procedural and substantive due process claims. Thus, we face only: (1) the facial takings claim; (2) the as-applied takings claim; (3) the equal protection issue; and (4) the state law claim under the California Permit Streamlining Act. In addition, Field argues for the first time on appeal that we should avoid deciding the takings claims because Pullman abstention is required.
 
 
 20
 We have jurisdiction under 28 U.S.C. § 1291. We affirm in part, and reverse and remand in part.
 
 III. Constitutional Claims
 
 21
 The heart of this case is a constitutional challenge to the 1990 HCO as a violation of the Takings Clause of the Fifth Amendment, as incorporated by the Fourteenth Amendment. Complicating our review, however, are two factors. First, Field faces a number of procedural obstacles to the assertion of his constitutional claims. The district court dismissed them all as either unripe, barred by the statute of limitations, or precluded by a prior adverse judgment. Our threshold inquiry, therefore, is whether Field has any live federal constitutional claim. If he does not--that is, if the district court was correct--then the case ends here for Field, and we need decide nothing else.
 
 
 22
 However, if Field can survive these procedural hurdles, we then face a second difficulty: the possibility that Field might be able to obtain some or all of the relief he seeks without our having to resolve the difficult Takings Clause question. The Supreme Court has admonished that "[i]n litigation generally, and in constitutional litigation most prominently, courts in the United States characteristically pause to ask: Is this conflict really necessary?" Arizonans for Official English v. Arizona, 520 U.S. 43, 117 S.Ct. 1055, 1072, 137 L.Ed.2d 170 (1997). If the constitutional question before us might be mooted or substantially narrowed by decision of the state law claims intertwined with the constitutional issues in this case, then our precedents require abstention in order to avoid an unnecessary conflict between state law and the federal Constitution. Sinclair Oil Corp. v. County of Santa Barbara, 96 F.3d 401, 409-10 (9th Cir.1996), cert. denied, --- U.S. ----, 118 S.Ct. 1386, 140 L.Ed.2d 646 (1998); Pearl Inv. Co. v. City and County of San Francisco, 774 F.2d 1460, 1464 (9th Cir.1985). Of course, if Field cannot clear the first hurdle, i.e., if we conclude that all his constitutional claims are unripe, time-barred or precluded, abstention becomes irrelevant. There would be nothing to "abstain" from.
 
 
 23
 Accordingly, we begin our discussion with the first inquiry: Does Field have a live constitutional claim?
 
 A. Facial Taking
 
 24
 Field's first constitutional claim is that the 1990 HCO is a facial taking of property without just compensation. He presses two, independent theories: that the HCO deprived him of the economically viable use of his hotel, e.g., Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992), and, alternatively, that the HCO is not sufficiently related to legitimate state interests. E.g., Dolan v. City of Tigard, 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994); Nollan v. California Coastal Comm'n, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987). The district court dismissed this claim as time-barred.
 
 
 25
 We begin our inquiry with a jurisdictional question-whether Field's facial takings claim is ripe for adjudication.[4]
 
 
 26
 Under our precedents, a facial takings claim alleging the denial of the economically viable use of one's property is unripe until the owner has sought, and been denied, just compensation by the state. Sinclair Oil, 96 F.3d at 406; Levald v. Palm, 998 F.2d 680, 686 (9th Cir.1993). An exception exists where the state does not have a "reasonable, certain, and adequate provision for obtaining compensation" at the time of the taking, in which case the facial takings claim is instantly ripe. Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 194, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); Levald, 998 F.2d at 686.
 
 
 27
 Field has not filed an inverse condemnation action in state court, and therefore has not been denied just compensation by California. It follows that Field's facial takings claim--insofar as it alleges the denial of the economically viable use of his property--is unripe, unless California's inverse condemnation procedures were inadequate to compensate Field when the alleged taking occurred, i.e., in 1990.
 
 
 28
 Unfortunately for Field, however, this alleged taking occurred three years too late. Prior to 1987, California did not recognize an inverse condemnation claim for regulatory takings, but in First English Evangelical Lutheran Church v. County of Los Angeles, 482 U.S. 304, 310-11, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987), the Supreme Court held this restriction on inverse condemnation claims unconstitutional. If the taking of which Field complains had occurred before 1987, resort to the California state courts would not have been required because it would have been futile. Del Monte Dunes v. City of Monterey, 920 F.2d 1496, 1507 (9th Cir.1990). See also Levald, 998 F.2d at 687-88. However, First English changed the law, and we have expressly held that, post-1987, California's inverse condemnation procedures are adequate to address a regulatory takings claim. Christensen v. Yolo County Bd. of Supervisors, 995 F.2d 161, 164 (9th Cir.1993); Schnuck v. City of Santa Monica, 935 F.2d 171, 174 (9th Cir.1991). These precedents control the case sub judice, and bar Field's first theory of a facial taking as unripe.
 
 
 29
 Field's other theory behind his facial takings claim is that the 1990 HCO does not substantially advance legitimate state interests. For this facial takings theory, we have held that the denial of just compensation is irrelevant for purposes of ripeness. Sinclair Oil, 96 F.3d at 407. Therefore, Field's claim was ripe the instant the 1990 HCO was enacted. Accordingly, to the extent that Field argues that the 1990 HCO is a facial taking because it is not sufficiently related to legitimate state interests, his facial takings claim is ripe. We conclude, therefore, that Field has a live federal constitutional claim challenging the 1990 HCO as a facial taking of property.
 
 B. As-Applied Taking
 
 30
 Field's second constitutional claim is an as-applied taking challenge to the 1990 HCO. The district court held that this claim is unripe, and we agree.
 
 
 31
 In order to assert an as-applied takings claim, a plaintiff must establish two things: (1) the governmental entity has reached a final decision on the applicability of the regulation to the plaintiff's property; and (2) the plaintiff is unable to receive just compensation from the government. Suitum v. Tahoe Reg'l Planning Agency, 520 U.S. 725, ---- - ----, 117 S.Ct. 1659, 1664-65, 137 L.Ed.2d 980 (1997); Williamson County, 473 U.S. at 186, 194, 105 S.Ct. 3108.
 
 
 32
 Field clearly fails the second ripeness requirement because he has not pursued an inverse condemnation claim in state court. The Fifth and Fourteenth Amendments do not prohibit the taking of property; they prohibit the taking of property without just compensation. Williamson County, 473 U.S. at 194, 105 S.Ct. 3108. Therefore, there is no constitutional injury until the plaintiff has availed himself of the state's procedures for obtaining compensation for the injury, and been denied compensation. Id. As with his unripe facial takings theory, Field argues that he is excused from filing an inverse condemnation claim because California's procedures are inadequate for regulatory takings. Again, we reject this argument.
 
 
 33
 Accordingly, we affirm the district court's dismissal of Field's as-applied takings claim as unripe.
 
 C. Equal Protection
 
 34
 In the district court, Field argued that the City's refusal to recognize the hotel as a prior non-conforming use under the zoning law denied him procedural and substantive due process. Field has dropped his procedural due process claim, and admits on appeal that his substantive due process claim is foreclosed by our decision in Armendariz.
 
 
 35
 In the district court, Field moved to amend his complaint to recharacterize his due process claim for injunctive relief as an equal protection claim, but the district court denied this motion on the ground that the equal protection claim would be precluded by the BPA's adverse decision, and therefore amendment would be futile. In making this ruling, the district court also noted that comity and finality concerns favoring state court review of administrative decisions "counsel[ ] for abstention until a final judgment is reached by the state court" in Field's mandamus action.
 
 
 36
 We review the denial of leave to amend for abuse of discretion, United States v. Pend Oreille Pub. Util. Dist. No. 1, 926 F.2d 1502, 1511-12 (9th Cir.1991), but we review the underlying legal issue of the availability of preclusion de novo. Miller v. County of Santa Cruz, 39 F.3d 1030, 1032 (9th Cir.1994).
 
 
 37
 The district court incorrectly concluded that Field's equal protection claim would have been precluded by the BPA's adverse decision. Federal courts give a state judgment the same preclusive effect that that judgment would receive in state court. This rule extends to state administrative decisions, as well as judicial decisions. Misischia v. Pirie, 60 F.3d 626, 629 (9th Cir.1995). Thus, an unreviewed agency decision against a federal plaintiff can preclude a § 1983 suit in federal court, even though § 1983 does not have an exhaustion requirement. Id. at 628-31; Miller, 39 F.3d at 1032. However, California does not extend preclusive effect to non-final agency decisions. Long Beach Unified Sch. Dist. v. State, 225 Cal.App.3d 155, 169, 275 Cal.Rptr. 449 (1990) ("A direct attack on an administrative decision may be made by appeal to the superior court for review by petition for administrative mandamus.... A decision will not be given collateral estoppel effect if such appeal has been taken...."). See also National Union Fire Ins. Co. v. Stites Prof. Law Corp., 235 Cal.App.3d 1718, 1726, 1 Cal.Rptr.2d 570 (1991) ("When, as here, a judgment is still open to direct attack by appeal or otherwise, it is not final and the doctrines of res judicata and collateral estoppel do not apply.").
 
 
 38
 Field has sought administrative review of the BPA's decision in a state court mandamus action that has since been stayed by stipulation of the parties. Therefore, the BPA's decision is not final and is not entitled to preclusive effect.
 
 
 39
 Nonetheless, we affirm. The amendment of Field's complaint to state an equal protection claim would have been futile because the district court would have had to dismiss the claim under Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).[5] Under Younger abstention, federal courts may not grant declaratory or injunctive relief that would interfere with state criminal or civil proceedings, including state administrative proceedings that are judicial in nature. Delta Dental Plan v. Mendoza, 139 F.3d 1289, 1293-94 (9th Cir.1998); Aiona v. Judiciary of the State of Hawaii, 17 F.3d 1244, 1248 (9th Cir.1994). Absent extraordinary circumstances, Younger abstention is required if the state proceedings are (1) ongoing, (2) implicate important state interests, and (3) provide the plaintiff an adequate opportunity to litigate federal claims. Hirsh v. Justices of the Supreme Court, 67 F.3d 708, 712 (9th Cir.1995). Unlike Pullman abstention, Younger abstention requires dismissal of the federal claim for injunctive relief, not a stay. Delta Dental Plan, 139 F.3d 1289, 1293-94.
 
 
 40
 We need not decide whether the BPA's decision-making process was sufficiently judicial in nature to warrant Younger abstention, see New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans, 491 U.S. 350, 370-73, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (describing inquiry), because it clearly became judicial when Field filed his petition for mandamus in state court, seeking review of the BPA's decision. Therefore, the Younger test is applicable.
 
 
 41
 Prong one of the test is satisfied because Field's mandamus action was pending at the time this suit was filed. It is irrelevant that the state mandamus action was stayed by the stipulation of the parties to allow the federal suit to proceed. As we made clear in Wiener v. County of San Diego, 23 F.3d 263 (9th Cir.1994), our inquiry on prong one of the Younger test is not on what is currently occurring in the state proceedings, but is focused on the narrow question of whether they were pending at the time the federal suit was filed, id. at 266; see also Kitchens v. Bowen, 825 F.2d 1337, 1341 (9th Cir.1987), and Field's mandamus action was pending at that time. Because the whole point of Younger abstention is to stop federal interference with state proceedings, it seems backwards to reject abstention because the state proceedings have been stayed to allow the federal case to proceed. This is exactly the interference that Younger abstention is designed to prevent.
 
 
 42
 Prong three is indisputably satisfied, leaving only prong two, which is also clearly met. The City has a strong interest in its land-use ordinances and in providing a uniform procedure for resolving zoning disputes. Cf. Mission Oaks Mobile Home Park v. City of Hollister, 989 F.2d 359, 361 (9th Cir.1993) (recognizing strength of municipal interest in rent control); Rancho Palos Verdes Corp. v. City of Laguna Beach, 547 F.2d 1092, 1094-95 (9th Cir.1976) (recognizing California municipalities' interest in land-use regulation). We have held that strong, local, i.e., municipal, interests in land-use regulation qualify as important "state" interests for purposes of Younger abstention. Mission Oaks, 989 F.2d at 361.
 
 
 43
 Accordingly, all three requirements for Younger abstention have been met. Therefore, we affirm the district court's denial of leave to amend Field's complaint as futile, albeit on the ground that his equal protection claim would have been barred by Younger.
 
 IV. Pullman Abstention
 
 44
 From the foregoing analysis, it is clear that Field has partially survived the first hurdle in this case. That is, he has convinced us that he has a live facial Takings Clause challenge to the 1990 HCO based on the theory that the HCO is not sufficiently related to legitimate state interests. His other claims--the as-applied takings claim, and his equal protection claim--do not clear the first hurdle, and we now put them aside.
 
 
 45
 On the live constitutional claim, we turn to the second hurdle: "Is this conflict really necessary?" Because of the state law issues in this case, we must answer this question in the negative and invoke Pullman abstention.
 
 
 46
 Pullman abstention is an equitable doctrine that allows federal courts to refrain from deciding sensitive federal constitutional questions when state law issues may moot or narrow the constitutional questions. Abstention is appropriate when: (1) the federal plaintiff's complaint requires resolution of a sensitive question of federal constitutional law; (2) the constitutional question could be mooted or narrowed by a definitive ruling on the state law issues; and (3) the possibly determinative issue of state law is unclear. Sinclair Oil, 96 F.3d at 409 (citing Pearl Inv. Co., 774 F.2d at 1463); Rancho Palos Verdes Corp., 547 F.2d at 1094. Once Pullman abstention is invoked by the federal court, the federal plaintiff must then seek a definitive ruling in the state courts on the state law questions before returning to the federal forum. Pullman, 312 U.S. at 501-02, 61 S.Ct. 643; Rancho Palos Verdes Corp., 547 F.2d at 1096.
 
 
 47
 Ironically, it is Field who urges us to abstain under Pullman. Normally, of course, Pullman abstention is invoked by the defendant, not only because it is the plaintiff who initially chose the federal forum (and thus presumably wants it), but because Pullman abstention tends to delay resolution of the plaintiff's constitutional claims. See Arizonans for Official English, 117 S.Ct. at 1073. Unsurprisingly, the City views Field's request for abstention as an outrageous act of chutzpah, and argues that Field should be stuck with the federal forum he chose. Although we have some sympathy for the City's position, we agree with Field that a plaintiff may raise Pullman abstention just as a defendant may, and he may do so for the first time on appeal.
 
 
 48
 Pullman abstention does not exist for the benefit of either of the parties but rather for "the rightful independence of the state governments and for the smooth working of the federal judiciary." Pullman, 312 U.S. at 501, 61 S.Ct. 643 (internal quotation marks omitted). As the Seventh Circuit has explained: "When a court abstains in order to avoid unnecessary constitutional adjudication ... it is not seeking to protect the rights of one of the parties; it is seeking to promote a harmonious federal system by avoiding a collision between the federal courts and state (including local) legislatures." Waldron v. McAtee, 723 F.2d 1348, 1351 (7th Cir.1983) (citation omitted). There is no reason why federal defendants should have a monopoly on preserving the harmonious functioning of the federal and state court systems, and there is no reason why a federal plaintiff cannot also argue for Pullman abstention. We are not concerned with tactical advantages to be gained from invoking Pullman abstention, but only with the comity reasons for abstention, and we willingly accept the suggestion by any party on how better to serve those interests.
 
 
 49
 Nor do we refuse to consider Pullman abstention because it was not raised before the district court. We assume that, as a matter of the responsible conduct of litigation, a party desiring to raise abstention will normally seek it first in the district court. But we have held that the court of appeals may sua sponte consider Pullman abstention. Richardson v. Koshiba, 693 F.2d 911, 915-17 (9th Cir.1982); see also Barichello, 98 F.3d at 955. And it is obvious that, if we ourselves can raise an issue for the first time on appeal, then the parties may do so as well. In any event, having determined that Field has properly raised the abstention question, we now decide whether to invoke the doctrine here.
 
 
 50
 The federal claim in this case is the facial takings challenge to the 1990 HCO, and we have "consistently held that land use planning is a sensitive area of social policy that meets the first requirement for Pullman abstention." Sinclair Oil, 96 F.3d at 401 (quoting Kollsman v. City of Los Angeles, 737 F.2d 830, 833 (9th Cir.1984)); see also Rancho Palos Verdes Corp., 547 F.2d at 1094-95; Sederquist v. City of Tiburon, 590 F.2d 278, 281-82 (9th Cir.1978).
 
 
 51
 The second and third requirements for Pullman abstention are met as well. Field's entire case--the applicability of the HCO and the need to obtain a conditional use permit--hinges on the designation of his hotel as "residential." Yet, that is precisely the designation he is challenging in his state mandamus action. In that action, he claims that the BPA erred as a matter of state law in ignoring the actual use (as opposed to the stated use) of his hotel prior to 1990. This claim will necessarily require the court to decide on the meaning of a prior non-conforming use under municipal zoning law, what effect should be given to Irribarren's mistaken designation of the hotel's rooms as residential, and whether a change in zoning designation also alters the hotel's residential/tourist designation under the HCO. These are all uncertain issues of state law, and a state court reversal of the BPA's ruling would moot Field's constitutional claim.
 
 
 52
 In these circumstances, Pullman abstention is appropriate. We reverse[6] the district court's dismissal of Field's facial takings claim and remand with instructions to enter a stay under Pullman.
 
 V. The Permit Streamlining Act
 
 53
 Field's final claim in this case is a supplemental state law claim under the California Permit Streamlining Act. Cal. Gov't Code § 65920 et seq. The City argues that this claim is moot because, since the notice of appeal was filed, it has granted Field the variance he sought for off-street parking. Field does not deny this assertion. In fact, although Field mentions the Permit Streamlining Act in the course of discussing Pullman abstention, he never actually says that he has a live claim under that act, he does not mention any such claim in the "issues on appeal" section of his brief, and he does not ask us to reverse the district court's dismissal of this claim. Field has therefore either abandoned this claim on appeal, or tacitly conceded its mootness. Either way, we affirm the district court's dismissal of this state law claim.
 
 VI. Conclusion
 
 54
 We affirm the district court's dismissal of Field's as-applied takings claim, the denial of leave to amend the complaint to state an equal protection claim, and the dismissal of the Permit Streamlining Act claim. We reverse the district court's dismissal of Field's facial takings claim and remand with instructions to abstain under Pullman.[7] Each side shall bear its own costs on appeal.
 
 
 55
 AFFIRMED in part, REVERSED and REMANDED in part.
 
 
 
 *
 Honorable Harlington Wood, Jr., Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation
 
 
 [1]
 Railroad Comm'n v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)
 
 
 [2]
 It would appear that Field had been operating in continual violation of the 1987 zoning law since its enactment, but only when he applied for the HCO conversion did the City Zoning Administrator finally insist on compliance with the zoning law
 
 
 [3]
 Fulfillment of these three conditions would also satisfy the conversion requirements under the HCO
 
 
 [4]
 Because we conclude that the district court should have abstained under Pullman, we do not reach the statute of limitations issue
 
 
 [5]
 Although the district court did not specifically abstain under Younger, it effectively applied this doctrine when it stated that comity and finality concerns "counsel" for abstention until a final state court judgment on Field's mandamus action is rendered. In any event, we can raise Younger abstention sua sponte. See Barichello v. McDonald, 98 F.3d 948, 955 (7th Cir.1996) (recognizing federal court's power to raise Younger abstention sua sponte )
 
 
 [6]
 We style this a "reversal" because under our precedents, a holding that the district court should have abstained under Pullman is deemed a reversal of a dismissal. E.g., Isthmus Landowners Ass'n v. California, 601 F.2d 1087, 1091 (9th Cir.1979); Santa Fe Land Improvement Co. v. City of Chula Vista, 596 F.2d 838, 842 (9th Cir.1979)
 
 
 [7]
 When Field presents his state law claims to the California courts, he is free to present his federal takings claim to them as well. England v. Louisiana State Bd. of Medical Examiners, 375 U.S. 411, 420-21, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). If he wishes to retain his right to return to federal court for adjudication of his federal claim, he must make an appropriate reservation in state court. Id. at 421, 84 S.Ct. 461; see also United Parcel Serv., Inc. v. California Pub. Util. Comm'n, 77 F.3d 1178, 1182-88 (9th Cir.1996) (discussing England reservation)