**CHARTER COMMUNICATIONS, INC., et. al., Plaintiffs,**

v.

**COUNTY OF SANTA CRUZ, Defendant.**

**No. C 99–01874 WHA.**

United States District Court, N.D. California.

Nov. 12, 1999.

Richard R. Patch, Coblentz, Patch, Duffy & Bass, LLP, San Francisco, CA, for Plaintiffs.

Dwight L. Herr, County Counsel of Santa Cruz, Santa Cruz, CA, for Defendant.

## ORDER DENYING MOTION
## TO DISMISS IN PART

ALSUP, District Judge.

Charter Communications, LLC ("Charter"), a wholly owned subsidiary of Charter Communications, Inc. ("CCI"), holds the franchise for a cable television system in Santa Cruz County ("the County"). Buyer Paul G. Allen sought to acquire CCI as part of a nationwide acquisition of various cable operations. Under the franchise agreement, the County's consent was required for the transfer but, by contract, could not be unreasonably withheld. Charter asked for consent and supplied the information required by the FCC form used for such transfers. The County asked for more information. The company supplied responsive information. The County then asked for yet more information. Charter refused to comply with the request, contending the County was demanding, unreasonably, irrelevant information. The County then denied consent "without prejudice." Charter closed anyway. Charter, CCI and Allen ("plaintiffs") now assert the claims discussed.

### I.

Plaintiffs' first claim under 42 U.S.C. § 1983 asserts infringement of the First and Fourteenth Amendment rights of free speech. The First Amendment imposes some restrictions on a local government's power to deny cable franchises. *See City of Los Angeles v. Preferred Communications, Inc.,* 476 U.S. 488, 493–5, 106 S.Ct. 2034, 90 L.Ed.2d 480 (1986). A local government, however, may permissibly ensure that a proposed owner or operator is capable and has the legal, technical and financial qualifications to build and to operate a system. *Preferred Communications, Inc. v. City of Los Angeles,* 13 F.3d 1327, 1333 (9th Cir.1994). Plaintiffs' first claim adequately alleges sufficient facts to raise the question whether the County kept on asking plaintiffs for so much extraneous and unnecessary information as to, in effect, deny the transfer.

### II.

Plaintiffs' second claim alleges under 42 U.S.C. § 1983 an unconstitutional taking in violation of plaintiffs' Fifth and Fourteenth Amendment rights. The Court disagrees with plaintiffs' characterization of their claim as a "facial" challenge to the County's action. Accordingly, the Court dismisses the claim as unripe for federal review.

Contrary to plaintiffs' assertions, plaintiffs' takings claim is more properly categorized as an "as-applied," rather than a "facial," challenge. "A facial challenge involves 'a claim that the mere enactment of a statute constitutes a taking,' while an as-applied challenge involves 'a claim that the particular impact of a government action on a specific piece of property requires the payment of just compensation.'" *Levald, Inc. v. City of Palm Desert,* 998 F.2d 680, 686 (9th Cir.1993), quoting *Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 494, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987). Here, plaintiffs challenge the "particular impact" (reduction in value) of a particular "government action" (the County's December 8, 1998, denial of Charter's request) on a "specific piece of property" (plaintiffs' cable television franchise). Plaintiffs' second claim thus is properly classified as an "as-applied" challenge. Had plaintiffs wished to bring a "facial" challenge, they should have addressed such to "the mere enactment" of Chapter 5.24 of the Code of Santa Cruz County, the ordinance under color of which the County denied Charter's application.

Because they challenge the County's decision "as-applied," plaintiffs must demonstrate that their claim is ripe for federal review. *The San Remo Hotel v. City and County of San Francisco,* 145 F.3d 1095, 1102 (9th Cir.1998). The Court finds plaintiffs incapable of satisfying either prong of the relevant test. *First,* plaintiffs fail to demonstrate that they are "unable to receive just compensation from the government." *Ibid.* The Fifth and Fourteenth Amendments do not prohibit the govern-

ment from taking private property; they merely require that the government justly compensate the party from whom such property is taken. Here, plaintiffs have failed to pursue in California state court a claim for inverse condemnation. Nor have plaintiffs argued that no suitable forum exists in which they could seek such relief. Thus, it is impossible to say that the County has violated the Constitution by taking plaintiffs' property and refusing to pay for it. *Ibid.*

*Second,* plaintiffs fail to demonstrate that the County "has reached a final decision on the applicability of the regulation to the plaintiff's property." *Ibid. See also Sinclair Oil Corp. v. County of Santa Barbara,* 96 F.3d 401, 409 (9th Cir.1996) (finding unripe an as-applied takings claim where plaintiff failed to procure a final decision from county administrative body regarding the extent to which plaintiff would be permitted to develop its property); *Jones Intercable of San Diego v. Chula Vista,* 80 F.3d 320, 324 (9th Cir.1996). The County's December 8 resolution denied plaintiffs' application "without prejudice," leaving plaintiffs free to renew it. The Court therefore will not exercise supplemental jurisdiction over this claim, and will not allow re-pleading it.

### III.

Plaintiffs' third claim alleges violations by the County of several sections of the Cable Television and Consumer Protection & Competition Act of 1992 ("Cable Act"). Section 617 of the Cable Act, codified at and referred to herein as 47 U.S.C. § 537 ("Section 537"), provides that a cable-franchising authority must make a final decision on an application to transfer a cable franchise within 120 days or the request "shall be deemed granted." Plaintiffs argue that the County failed to comply with this schedule, thus violating plaintiffs' rights under Section 537, as well as under 47 U.S.C. § 544(f) and § 556(c).

At the threshold, the Court questions whether plaintiffs have alleged sufficient facts to establish the 120–day element. Although neither plaintiffs' complaint nor any party's moving papers provide the date, it appears from the County's Request to Take Judicial Notice, Exh. 3, p. 16, that Charter lodged its request to transfer its system on August 18, 1998. The County rejected Charter's request on December 8, 1998, less than 120 days later.

However that may be, the Court concludes that no private right of action was intended by Congress to sue in federal court under any of the Cable Act sections cited by plaintiffs. While the factors in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), would seemingly support implied rights of action under those sections,[1] the Supreme Court has made clear that the ultimate test, at least where a comprehensive enactment has created some but not other express remedies, is whether Congress intended for a private right of action.

The present case bears an analogy to *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981).

---

1. The Court analyzes, for example's sake, the application of the four *Cort v. Ash* factors to Section 537, the Cable Act provision most central to plaintiffs' claims. First, plaintiffs and the County agree that Congress intended Section 537 to benefit cable operators by denying franchising authorities the ability to indefinitely delay transfers. The second factor is insubstantial, as the Court has found no statement in the legislative history regarding Section 537. As for the third factor, the Court finds that a private right of action would further several of the Cable Act's stated purposes, including: "establish[ing] franchise procedures and standards which encourage the growth and development of cable systems ..."; "establish[ing] guidelines for the exercise of Federal, State, and local authority with respect to the regulation of cable systems"; and "promot[ing] competition in cable communications and minimiz[ing] unnecessary regulation that would impose an undue economic burden on cable systems." 47 U.S.C. § 521. Fourth and finally, the Court has found no state cause of action resembling Section 537, meaning the right is one borne of federal, rather than state, law.

There, the Supreme Court leapt over the *Cort v. Ash* factors and held that there is no implied right of action under the Federal Water Pollution Control Act or the Marine Protection, Research and Sanctuary Act. "The key to the inquiry is the intent of the Legislature," the Court held. Noting the elaborate enforcement provisions of the acts, the Court felt "compelled to conclude that Congress provided precisely the remedies it considered appropriate." *Id.* at 13–15, 101 S.Ct. 2615.

So too here. The Cable Act, its predecessors and its amendments are sweeping legislation, at least eleven provisions of which grant or define express causes of action.[2] None was created for Section 537. That is the best evidence of Congress' intent. Our review of the legislative history finds nothing to the contrary.

Because the Court finds no implied rights of action under Sections 537, 544(f) and 556(c), it concludes that plaintiffs' only recourse in this regard is a state-law contract action of the type outlined in plaintiffs' fourth claim. The Court further finds that such an action, based as it is in state law, fails to present a federal question sufficient to confer federal subject-matter jurisdiction. *Janakes v. United States Postal Service,* 768 F.2d 1091, 1093 (9th Cir.1985) (holding that "[a] declaratory judgment plaintiff may not assert a federal question in his complaint if, but for the declaratory judgment procedure, that question would arise only as a federal defense to a state law claim brought by the declaratory judgment defendant in state court"). *See also Nashoba Communications v. Town of Danvers,* 893 F.2d 435, 437–9 (1st Cir.1990) (failing to find federal question jurisdiction in declaratory judgment proceeding by cable system operator where federal cable statute relied upon by operator would not have appeared in franchising authority's anticipated "well-pleaded" state court complaint). But see *Village of Alden v. Cablevision Indus., Inc.,*

No. 98–CV–325S(H), 1998 WL 911997, at *3–4 (W.D.N.Y. Oct.26, 1998).

Given, however, that the Court will separately have subject-matter jurisdiction by virtue of the First Amendment claim, this Court may (or may not), depending on how the record develops, exercise supplemental jurisdiction over plaintiffs' contract claim, including the alleged Cable Act violations. 28 U.S.C. § 1367.

\* \* \* \* \* \*

In summary, the motion to dismiss is DENIED as to plaintiffs' first and fourth claims, GRANTED as to plaintiffs' third claim and GRANTED without leave to amend as to plaintiffs' second claim. The parties are free to take discovery and to prepare their case for trial or summary judgment.

**IT IS SO ORDERED.**

---

**2.** *See* 47 U.S.C. §§ 532(d) and (e), 534(d), 535(j), 542(d), 545(b), 546(e), 551(f), 553(c), 554(g), and 555a) ("Any cable operator adversely affected by any final determination

made by a franchising authority under sections 541(a)(1), 545 or 546 of this title may commence an action within 120 days after receiving notice of such determination …").