**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

QUICKEN LOANS, INC., a Michigan
corporation,
             *Plaintiff-Appellant,*

             v.                                No. 04-16244

WILLIAM P. WOOD, in his official            D.C. No.
capacity as Commissioner of the         CV-03-00256-GEB
California Department of
Corporations,
             *Defendant-Appellee.*

QUICKEN LOANS, INC., a Michigan
corporation,
             *Plaintiff-Appellee,*

             v.                                No. 04-16312

WILLIAM P. WOOD, in his official            D.C. No.
capacity as Commissioner of the         CV-03-00256-GEB
California Department of
Corporations,                              OPINION
             *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of California
Garland E. Burrell, District Judge, Presiding

Argued and Submitted
March 14, 2006—San Francisco, California

Filed May 22, 2006

5593

Before: Alfred T. Goodwin, Stephen Reinhardt, and
Michael Daly Hawkins, Circuit Judges.

Opinion by Judge Goodwin

**COUNSEL**

Edward P. Sangster, San Francisco, California, for the plaintiff-appellant/cross-appellee.

Douglas M. Gooding, Corporations Counsel, San Francisco, California, for the defendant-appellee/cross-appellant.

**OPINION**

GOODWIN, Circuit Judge:

These cross-appeals involve the California Department of Corporations Commissioner's (Commissioner) efforts to

enforce previous versions of California's per diem loan interest statutes. The district court held that these laws were preempted by the Depository Institutions Deregulation and Monetary Control Act (DIDMCA), 12 U.S.C. § 1735f-7a, but denied a permanent injunction to prevent the Commissioner from enforcing the preempted statutes.

*Wells Fargo Bank N.A. v. Boutris*, 419 F.3d 949 (9th Cir. 2005), held, after the district court had ruled in this case, that California's per diem statutes are not preempted by the DIDMCA. *Wells Fargo* controls here.

The district court also held that the Alternative Mortgage Transaction Parity Act (Parity Act), 12 U.S.C. §§ 3801-06, does not preempt the per diem statutes as applied to alternative mortgage transactions. We affirm this conclusion because California's per diem statutes are not expressly preempted, do not directly conflict with, and do not impede Congress' purposes in enacting the Parity Act. The per diem statutes therefore are not preempted by the Parity Act.

Finally, we affirm the district court's dismissal of Quicken Loans' as-applied federal takings claim for lack of ripeness, and hold that any facial claim was waived.

## I.  Background

Quicken Loans (Quicken) is licensed to engage in residential mortgage lending in California by the California Department of Corporations Commissioner. *See* CAL. FIN. CODE §§ 50000 *et seq.*

Quicken describes its loan process as follows:

> After Quicken Loans approves a loan, Quicken Loans and its California borrowers typically complete the lending process through independent escrow companies . . . . Quicken Loans deposits the

> funds for the loan into the escrow. The borrower delivers the executed loan documents to the escrow company . . . .
>
> When the conditions required to close the transaction have been satisfied, the escrow company is instructed by Quicken Loans to disburse the funds to or on behalf of the borrower, and to deliver the deed of trust to the County Recorder's office for recordation in the public records . . . .
>
> . . . .
>
> Quicken Loans historically has instructed the escrow company to assess interest commencing on the date the escrow company disburses the loan funds directly to the borrower, or to a third party on the borrower's behalf.

Quicken admits that "there are occasional delays between (a) the disbursement of loan funds to the borrower and (b) 'recordation' of the deed of trust as interpreted by the Commissioner." During these delays Quicken assesses interest on the disbursed loans.

Because Quicken is licensed under the California Residential Mortgage Lending Act, the Act's prohibition on charging interest in excess of one day prior to recordation applies to Quicken. CAL. FIN. CODE § 50204(o) (2000) (amended 2003 to prohibit violating a similar provision located at CAL. CIV. CODE § 2948.5). In addition, California Civil Code section 2948.5 provides that a borrower is not required to pay interest for a period in excess of one day prior to recording. CAL. CIV. CODE § 2948.5 (1990) (amended 2003 to prohibit interest payments more than one day prior to disbursement instead of one day prior to recordation). Although the statutes were amended to prohibit interest payments more than one day prior to disbursement, these amendments did not become effective until

after Quicken had received interest payments in violation of the earlier applicable laws. All references to these statutes refer to the prior versions of the statutes unless otherwise specified.

On March 11, 2002, the Commissioner sent Quicken a letter asserting that Quicken had violated and was continuing to violate these pre-amendment statutes. On January 28, 2003, the Commissioner ordered Quicken to review all loans it had made in California beginning October 14, 1999, and to refund those interest payments received which violated the per diem statutes. He also ordered Quicken to pay the borrowers 10% interest on the refunded interest, and to submit a report detailing the loans and amounts refunded. The Commissioner sought to revoke Quicken's license for failure to comply with California law.

Quicken's First Amended Complaint alleged that the DIDMCA and the Parity Act preempt the per diem statutes, and that the per diem statutes effected an unlawful taking in violation of the Constitution's Takings Clause. Quicken and the Commissioner cross-moved for summary judgment.

The district court granted Quicken's motion for partial summary judgment on the DIDMCA claim, dismissed Quicken's takings claim for lack of ripeness, and granted the Commissioner's motion for summary judgment on the Parity Act claim.

Quicken assigns error to the resolutions of the Parity Act and Takings Clause claims, and to the denial of a permanent injunction barring enforcement of the per diem statutes to the extent they are preempted by the DIDMCA. The Commissioner cross-appeals, assigning error to the resolution of the DIDMCA claim.

## II.  DIDMCA

[1] *Wells Fargo* held that California's per diem statutes are not preempted by the DIDMCA. 419 F.3d at 969. Quicken

attempts to argue that *Wells Fargo* should not be followed because it was decided by a three-judge panel rather than by the court sitting en banc, and that *Wells Fargo*'s DIDMCA discussion is dicta. In general, "one three-judge panel of this court cannot reconsider or overrule the decision of a prior panel." *United States v. Gay*, 967 F.2d 322, 327 (9th Cir. 1992). Furthermore, the *Wells Fargo* DIDMCA discussion begins with the statement that "we must decide this substantive preemption issue." *Wells Fargo Bank N.A.*, 419 F.3d at 967. So much for "dicta," and Quicken cannot distinguish *Wells Fargo*. Accordingly, the DIDMCA does not preempt the California per diem statutes here. As Quicken does not prevail on the merits, an injunction is not available. *See Amoco Prod. Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 546 n.12 (1987).

## III.  Parity Act

**[2]** Congress enacted the Parity Act after finding that "increasingly volatile and dynamic changes in interest rates ha[d] seriously impared [sic] the ability of housing creditors to provide consumers with fixed-term, fixed-rate credit secured by interests in real property." 12 U.S.C. § 3801(a). Congress noted that the Office of Thrift Supervision (OTS), among other agencies, had "recognized the importance of alternative mortgage transactions and ha[d] adopted regulations authorizing federally chartered depository institutions to engage in alternative mortgage financing." *Id.* Congress enacted the Parity Act "to eliminate the discriminatory impact that those regulations have upon nonfederally chartered housing creditors." *Id.* § 3801(b). The Parity Act authorizes nonfederally chartered housing creditors to "make, purchase, and enforce alternative mortgage transactions" when those transactions are made "in accordance with regulations governing alternative mortgage transactions as issued by the Director of the Office of Thrift Supervision." *Id.* § 3803(a). In a section entitled "Preemption of State constitutions, laws, or regulations," the Parity Act provides that "[a]n alternative mortgage transaction

may be made by a housing creditor in accordance with this section, notwithstanding any State constitution, law, or regulation." *Id.* § 3803(c).

Quicken asserts that the district court erred in holding that the Parity Act does not preempt the California per diem statutes as applied to alternative mortgage transactions. Quicken makes two arguments: (1) the per diem statutes are preempted because they conflict with an OTS regulation on adjustments and (2) the per diem statutes are expressly preempted because they destroy parity between federally and non-federally chartered lenders.

The Supremacy Clause provides that federal laws "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2. Preemption analysis must "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). "The purpose of Congress is the ultimate touchstone of preemption analysis." *Cipollone v. Liggett Group*, 505 U.S. 504, 516 (1992) (internal quotation marks omitted). State law is preempted if Congress' intent to preempt is (1) explicit in the federal statute's language or (2) implicit in its structure and purpose; (3) if state law actually conflicts with federal law; or (4) if federal law so thoroughly occupies the legislative field that Congress left no room for state regulation. *Id.* Conflict preemption exists "where 'compliance with both federal and state regulations is a physical impossibility,' or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (quoting *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963); and *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). Quicken's arguments implicate both express and conflict preemption.

### A.　Conflict with 12 C.F.R. § 560.357

**[3]** The Parity Act authorized the OTS to identify, describe, and publish those regulations that are inappropriate and inapplicable to nonfederally chartered housing creditors. 12 U.S.C. § 3801 note. The OTS identified 12 C.F.R. § 560.35 as "appropriate and applicable for state housing creditors." 12 C.F.R. § 560.220(b). This regulation provides that adjustments to the payment amount for a home loan must comply with the following limitations:

> Adjustments to the payment and the loan balance that do not reflect an interest-rate adjustment may be made if:
>
> (1) The adjustments reflect a change in an index that may be used pursuant to paragraph (d) of this section;
>
> (2) In the case of a payment adjustment, the adjustment reflects a change in the loan balance or is made pursuant to a formula, or to a schedule specifying the percentage or dollar change in the payment as set forth in the loan contract; or
>
> (3) In the case of an open-end line-of-credit loan, the adjustment reflects an advance taken by the borrower under the line-of-credit and is permitted by the loan contract.

12 C.F.R. § 560.35(c).

Quicken contends that the per diem statutes' prohibition on collecting interest more than one day prior to recording conflicts with § 560.35. The conflict, it argues, arises because when recording occurs more than one day after disbursement, the per diem statutes "require adjustments in the payment amount based upon a factor not permitted by the regulation:

the arbitrary date of late recording." This amounts to a conflict argument invoking physical impossibility. The Commissioner contends that the regulation "does not appear in any way intended to address (or preempt) state statutes governing commencement of interest." Likewise, the district court held that had Quicken complied with the per diem statutes in the first place, no adjustments would be necessary.

**[4]** Despite Quicken's argument, there is no actual conflict between the California per diem statutes and the OTS regulation on adjustments. It is not physically impossible to charge no interest for more than one day before recording and to adjust payments only in accordance with the OTS regulation's requirements. Because commencement of interest is not a form of interest adjustment, summary judgment for the Commissioner was appropriate.

Although Quicken also contends that the Commissioner failed to meet his burden to show that there was no genuine issue of material fact regarding the Parity Act, this argument is again based on Quicken's conflation of a payment adjustment with commencement of interest. This is a legal rather than factual argument. The Commissioner satisfied his burden to show there was no genuine issue of material fact.

## B.  Express Preemption

**[5]** Quicken also argues that the Parity Act explicitly preempts the per diem statutes. Quicken invokes 12 U.S.C. §§ 3801(b) and § 3803(c) to support this argument. Section 3801(b) states the purpose of the Parity Act:

> It is the purpose of this chapter to eliminate the discriminatory impact that those regulations [authorizing federally chartered depository institutions to engage in alternative mortgage financing] have upon nonfederally chartered housing creditors and provide them with parity with federally chartered institutions

by authorizing all housing creditors to make, purchase, and enforce alternative mortgage transactions so long as the transactions are in conformity with the regulations issued by the Federal agencies.

12 U.S.C. § 3801(b). Section 3803(c) is entitled "Preemption of State constitutions, laws or regulations," and provides that "[a]n alternative mortgage transaction may be made by a housing creditor in accordance with this section, notwithstanding any State constitution, law, or regulation."

**[6]** Quicken contends that because the per diem statutes do not apply to federally chartered housing creditors, the Parity Act expressly preempts them because "such preemption is necessary to achieve parity." The Parity Act's preemption clause does not preempt every state law regulating alternative mortgage transactions (AMTs), nor does the Act contain language mandating that federally and nonfederally chartered housing creditors must be treated identically in every respect under state law. *See, e.g.*, *Ansley v. Ameriquest Mortgage Co.*, 340 F.3d 858, 864 (9th Cir. 2003) ("[T]he Parity Act d[oes] not completely preempt all California laws relating to alternative mortgage transactions so as to create federal jurisdiction."); *Nat'l Home Equity Mortgage Ass'n v. Office of Thrift Supervision*, 373 F.3d 1355, 1359 (D.C. Cir. 2004) ("[T]he Parity Act does not unambiguously express an intent to preempt all state laws governing AMTs."); *Black v. Fin. Freedom Senior Funding Corp.*, 112 Cal. Rptr. 2d 445, 456 (Cal. Ct. App. 2001) ("[T]he preemption language of the Parity Act does not contain a clear manifestation of congressional intent to preempt all state laws concerning the terms and marketing of alternative mortgage transactions."); 12 U.S.C. § 3802(2) (requiring housing creditors to be "licensed under applicable State law" and "subject to the applicable regulatory requirements and enforcement mechanisms provided by State law"). Because the Parity Act's language does not explicitly preempt state statutes which regulate the commencement of interest, Quicken's express preemption argument fails.

## C. Extent of Congressional Intent to Preempt

Quicken's claim, despite its identification as an express preemption argument, is better construed as an argument that the per diem statutes " 'stand[ ] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Gade*, 505 U.S. at 98 (quoting *Hines v. Davidowitz*, 312 U.S. at 67). This is because only by looking to Congress' purposes and objectives could one hope to identify what "preemption is necessary to achieve parity." Quicken does not explain what it means by this phrase, although it does distinguish it from "absolute parity," which it does not seek.

By disclaiming the standard of "absolute parity," Quicken implicitly concedes that the Parity Act does not preempt "all state restrictions on alternative mortgage transactions made by non-federally chartered creditors." Quicken argues for preemption "to the extent required for 'parity' — not 'absolute parity.' " Without offering a formulation of parity for this court to adopt, Quicken argues that "the Parity Act's preemptive scope is not limited to state restrictions that conflict with regulations identified by the OTS."

We are therefore asked to articulate the preemptive scope of the Parity Act. Notwithstanding § 3801(b) and § 3803(c), Congress explicitly referred to the ongoing validity of state licensing requirements and "regulatory requirements and enforcement mechanisms provided by State law" governing housing creditors. 12 U.S.C. § 3802(2). Given this explicit reference, Congress did not intend to preempt all state regulation. Quicken does not seek this 'absolute parity' holding, and we do not adopt it. *See also Black*, 112 Cal. Rptr. 2d at 457 (declining to read § 3801(b) to require absolute parity or complete preemption).

We must therefore determine the scope of the clause: "notwithstanding any State constitution, law, or regulation." 12

U.S.C. § 3803(c). Other courts asked to rule on the preemptive scope of the Parity Act have confronted direct conflicts between state laws and OTS regulations. *See, e.g.*, *Nat'l Home Equity Mortgage Ass'n v. Face*, 239 F.3d 633 (4th Cir. 2001) (state prepayment law); *Shinn v. Equity Mortgage Servs., Inc.*, 96 F. Supp. 2d 419 (D.N.J. 2000) (same); *Glukowsky v. Equity One, Inc.*, 180 N.J. 49 (2004) (same). This case does not present a direct conflict with an OTS regulation, nor does it present a direct conflict with the Parity Act because the per diem statutes do not prohibit alternative mortgage transactions.

[7] The California Court of Appeals has addressed whether California's per diem statutes are preempted by the Parity Act because they "stand[ ] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Black*, 112 Cal. Rptr. 2d at 456. That court rejected the argument that "the goal of the Parity Act is national uniformity in the regulation of state-chartered housing lenders with respect to alternative mortgage transactions" because "[g]iven the dearth of applicable federal regulations, the national uniform standard for state-chartered housing lenders would be 'anything goes.' That is hardly a uniform standard." *Id.* at 457. It specifically rejected the argument that Congress' purpose required preemption of the state laws at issue because the state claims did "not seek to prohibit or impede the making of alternative mortgage transactions that comport with the applicable federal regulations," and the claims do not "tread on the areas of federal regulation applicable to non-federally chartered housing creditors, namely, [those areas covered by regulations the OTS identified as applicable to non-federally chartered housing creditors]." *Id.* at 458.

[8] *Black*'s reasoning applies to this case as well. Here, California's per diem statutes do not 'tread on' an area of federal regulation which the OTS has identified as applicable to non-federally chartered housing creditors. The per diem statutes also do not prohibit the making of alternative mortgage

transactions. That leaves the issue of impeding the making of alternative mortgage transactions. This essentially returns the analysis to its original point of determining what is 'necessary to achieve parity' — i.e., what impedes the making of alternative mortgage transactions.

California's per diem statutes apply to mortgages on real property, and do not distinguish between alternative mortgages and fixed-rate, fixed-term mortgages. CAL. CIV. CODE § 2948.5. The per diem statutes therefore do not impede the making of alternative mortgage transactions per se. These statutes do not apply to federally chartered housing creditors because Congress delegated "complete authority to regulate federal savings and loan associates" to the OTS. *Wash. Mut. Bank v. Superior Court of L.A. County*, 95 Cal. App. 4th 606, 618 (Cal. Ct. App. 2002).

Quicken argues that because the statutes do not apply to federally chartered creditors, they should not apply to non-federally chartered creditors. However, Congress has not delegated similarly complete authority to the OTS to regulate nonfederally chartered housing creditors. 12 U.S.C. § 3802. The full purposes and objectives of Congress in enacting the Parity Act do not include delegating complete authority to regulate nonfederally chartered housing creditors to the OTS. *Id.* § 3802. Section 3802(2) suggests that Congress did not intend to preempt all state laws relating to nonfederally chartered housing creditors. Indeed, § 3801 suggests that the Parity Act was intended to eliminate the discriminatory impact that regulations authorizing federally chartered depository institutions to engage in alternative mortgage financing have upon nonfederally chartered housing creditors. Section 3801 further states that it is the purpose of the Parity Act to provide nonfederally chartered housing creditors with parity by authorizing all housing creditors to make, purchase, and enforce alternative mortgage transactions so long as the transactions are in conformity with OTS regulations.

**[9]** The per diem statutes do not apply exclusively to alternative mortgages, but rather are statutes of general applicability. They do not touch upon the areas identified by the OTS as essential and intrinsic to the ability to engage in alternative mortgage transactions. The per diem statutes do not restrict a housing creditor's ability to make an alternative mortgage transaction, any more than does any statute which applies to nonfederally chartered housing creditors but not to federally chartered housing creditors. Because the California per diem statutes do not conflict with OTS regulations applicable to nonfederally chartered housing creditors; do not prohibit making, purchasing, or enforcing alternative mortgage transactions; and do not inhibit the making, purchasing, or enforcing of alternative mortgage transactions per se, they are not preempted by the Parity Act.

## IV.   Takings Clause

Quicken argues that the district court erred when it dismissed Quicken's takings claim as unripe. Quicken asserts that the district court applied the wrong ripeness test.

### A.   As-Applied Takings Claim

**[10]** If Quicken is pursuing an as-applied takings claim, it must establish that (1) "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue," and (2) Quicken has sought "compensation through the procedures the State has provided for doing so." *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186, 194 (1985). The district court correctly held that Quicken did not establish either of these requirements.

**[11]** There is no indication in the record that Quicken sought compensation through any California procedures.

However, there are some situations in which a plaintiff need not first seek compensation from the state:

> [A] plaintiff may be excused from this requirement if he demonstrates that "the inverse condemnation procedure [of the state] is unavailable or inadequate." [*Williamson*, 473 U.S.] at 197, 105 S.Ct. 3108. In addition, "an exception exists where the state does not have a 'reasonable, certain, and adequate provision for obtaining compensation' at the time of the taking," *San Remo Hotel v. City and County of San Francisco*, 145 F.3d 1095, 1101-02 (9th Cir. 1998); *see also Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 687 (9th Cir. 1993), or where resorting to state remedies would be futile, *see City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 710, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999).

*Wash. Legal Found. v. Legal Found. of Wash.*, 271 F.3d 835, 851 (9th Cir. 2001) (en banc). There is no indication in the record that Quicken demonstrated that any of these exceptions apply.

## B.   Facial Takings Claim

[12] On appeal, it appears that Quicken is asserting a facial takings claim that the per diem statutes do not substantially advance legitimate state interests. For this claim, "the denial of just compensation is irrelevant for purposes of ripeness." *San Remo Hotel v. City and County of San Francisco*, 145 F.3d 1095, 1102 (9th Cir. 1998). Accordingly, this claim was ripe when the per diem statutes were enacted. *See id.*

[13] However, Quicken failed to assert this facial takings claim below. At a hearing in the district court, the district judge sought to clarify what types of takings claims Quicken was making:

THE COURT:     What type of takings issue is involved? Is it a facial takings or an applied takings or both?

MR. SANGSTER:     It's an applied takings, Your Honor. And it's an applied takings because of the manner in which the Commissioner is interpreting the statute, the recording statute.

THE COURT:     Okay.

MR. SANGSTER:     The Commissioner — sorry.

THE COURT:     So, a facial takings is not at issue, it's just applied takings?

MR. SANGSTER:     I guess I haven't thought of it in the terms Your Honor — I was expecting, when Your Honor started, whether it was per se or regulatory, and I'm not focused as much on facial. It's as applied, because there is a manner in which the Commissioner could interpret this statute —

THE COURT:     I have a general idea what is meant by "as applied."

MR. SANGSTER:     Yes, Your Honor.

THE COURT:     I'm trying to determine whether a facial taking is involved, and you are telling me that it is not

involved. Is it involved in your complaint at all?

MR. SANGSTER: No, Your Honor.

THE COURT: So, your complaint just deals with an applied taking?

MR. SANGSTER: Yes, Your Honor.

THE COURT: All right.

The district court relied on this discussion in framing the takings clause issue in its order:

> At the hearing on June 30, 2003, Quicken Loans clarified that neither its Complaint nor its regulatory taking motion asserts a facial challenge against the per diem statutes; rather it challenges the Commissioner's application of the statutes to the interest Quicken Loans seeks to earn on mortgage loans.[FN5]

> [FN5] Therefore Quicken Loans has withdrawn any facial challenge asserted in its Complaint.

Although Quicken could have asserted a ripe facial takings claim, it expressly waived this argument.

## CONCLUSION

For the reasons stated above, the summary judgment in favor of Quicken on the DIDMCA claim is VACATED. We AFFIRM the judgment denying Quicken a permanent injunction on the DIDMCA claim, granting summary judgment on the Parity Act claim, and dismissing the takings claim.

Vacated in part, affirmed in part, and remanded. Commissioner to recover costs on appeal.