Kim J. KAFKA, Cindy R. Kafka, Diamond K Ranch Enterprises, LLC, Connie R. Corbett, Pat L. Corbett, and Yellowstone Game Ranch, LLC, individually and on behalf of others similarly situated, Plaintiffs,

v.

Jeff HAGENER and Marc Bridges, individually and in official capacities as Director of the Montana Department of Fish, Wildlife & Parks, and the Executive Officer of the Montana Department of Livestock, Defendants.

Sportsmen for I–143, Montana Wildlife Federation, Ravalli County Fish & Wildlife Association, and Montana Bowhunters Association, Defendant–Intervenors

No. 01–32–GF–DWM.

United States District Court,
D. Montana,
Great Falls Division.

Oct. 5, 2001.

Stanley T. Kaleczyc, Mark R. Taylor, Browning Kaleczyc Berry & Hoven, Helena, MT, for Kim J. Kafka, Cindy R. Kafka, Diamond K Ranch Enterprises, LLC, Connie R. Corbett, Pat L. Corbett, Yellowstone Game Ranch, LLC, plaintiffs.

Chris D. Tweeten, Mike McGrath, Office of the Montana Attorney General, Helena, for Jeff Hagener, Marc Bridges, defendants.

William A. Rossbach, Rossbach Brennan, P.C., Missoula, MT, Jack R. Tuholske, Missoula, MT, Elizabeth A. Brennan, Missoula, MT, for Sportsmen for I–143, Montana Wildlife Federation, Ravalli County Fish & Wildlife Assoc, Montana Bowhunters Association, Inc., intervenor defendants.

## ORDER

MOLLOY, Chief Judge.

### I. Introduction

The Complaint in this case questions the constitutionality of Ballot Initiative 143, a measure approved by a majority of the voters of Montana in the November 7, 2000 general election. I–143 amended Montana's game farm laws to establish a

permanent moratorium on issuance of new game farm licenses, to reimpose a prohibition on transfers of game farm licenses, and to prohibit game farm licensees from allowing killing of the animals under the game farm license for a fee. Plaintiffs argue that I–143 abridges their rights guaranteed by Article I, Section 8 and the Fourteenth and Fifteenth Amendments to the United States Constitution, as well as their rights guaranteed by Article II, Sections 3, 4, and 17 of the Montana Constitution. Plaintiffs seek a preliminary injunction only to enjoin the prohibition against shooting game farm animals for a fee. I am not persuaded they are correct. Consequently the request for injunctive relief is denied for the reasons set forth below.

## II. Analysis

### A. Preliminary Injunction

■ "To obtain a preliminary injunction, a party must show either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in its favor." *Apple Computer, Inc. v. Formula International, Inc.*, 725 F.2d 521, 523 (9th Cir.1984); *See also Los Angeles Memorial Coliseum Commission v. National Football League*, 634 F.2d 1197, 1200–01 (9th Cir.1980). These two formulations create a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. *Coliseum*, 634 F.2d at 1201. Plaintiffs must also show a significant threat of irreparable injury. *Flynt Distributing Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir.1984). The purpose of a preliminary injunction is to preserve the status quo. *Coliseum*, 634 F.2d at 1200.

■ "A preliminary injunction is sought upon the theory that there is an urgent need for speedy action to protect the plaintiff's rights. By sleeping on its rights a plaintiff demonstrates the lack of need for speedy action." *Lydo Enterprises, Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir.1984). Purely monetary injuries are not normally considered irreparable. *Coliseum*, 634 F.2d at 1202.

The only claim at issue for the preliminary injunction Plaintiffs seek here is I–143's ban on killing game farm animals for a fee.

### B. Success on the Merits

The first step is to determine the likelihood of success on the merits. Plaintiffs claim that I–143's ban on fee killing violates the Commerce Clause of the United States Constitution. Additionally Plaintiffs claim the ban constitutes a taking of their property without due process of law.

#### 1. Commerce Clause

■ The federal Constitution empowers Congress to regulate commerce with foreign nations and among the states. U.S. Const. Art. I, § 8. Protection of its wildlife is one of a state's most important interests. *Pacific Northwest Venison Producers v. Smitch*, 20 F.3d 1008, 1013 (9th Cir.1994). Nonetheless, states are confined by the Commerce Clause when legislating in areas of legitimate state concern, such as protection of wildlife. *See Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 471, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981). The Commerce Clause forbids discrimination against interstate commerce. *Alaska Airlines, Inc. v. City of Long Beach*, 951 F.2d 977, 983 (9th Cir.1991) (*en banc*). State law may violate the Commerce Clause in at least two ways. If the state law affirmatively discriminates against interstate commerce or if it incidentally affects interstate commerce then a legitimate argument exists that Article I, Section 8 is violated and is therefore an unconstitutional exercise of state power. *Northwest Venison*, 20 F.3d at 1012 (*citing*

*Maine v. Taylor,* 477 U.S. 131, 138, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986)). When a state law affirmatively discriminates against interstate commerce, it violates the Commerce Clause unless the state shows a legitimate state interest unrelated to economic protectionism that is served by the law. *See id.* The showing also requires demonstrating that the articulated legitimate interest could not be served equally as well by available nondiscriminatory means. *See id.; Maine v. Taylor,* 477 U.S. at 138, 106 S.Ct. 2440. If a state law is facially neutral and applies to in-state and out-of-state interests evenhandedly, then Plaintiffs must show that the burden imposed on interstate commerce is clearly excessive in relation to the putative in-state benefits. *Maine v. Taylor,* 477 U.S. at 138, 106 S.Ct. 2440 (*citing Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970)).

Plaintiffs claim that the ban on fee killing "functionally serves as an export ban that targets out-of-state customers by prohibiting the businesses that principally serve them." Pl. Br. at 13. The argument is that virtually all of the people who kill game farm animals for a fee are not Montana residents. The argument continues by asserting that passage of I–143 eliminated the ability of non-residents to kill privately-owned deer and elk in Montana. The argument concludes by asserting these propositions amount to economic protectionism since anyone who wishes to kill elk or deer in Montana after passage of I–143 needs a state license to do so.

I–143's ban on fee killing of privately-owned alternative livestock, game animals, or exotic big-game species is codified at M.C.A. § 87–4–414(2). The statute is neutral on its face. It forbids game farm licensees from charging a fee to kill alternative livestock, game animals, or exotic big-game species, regardless of the "hunter's" residency. When a statute is facially neutral, "the burdens of the statute must so outweigh the putative benefits as to make the statute unreasonable or irrational. Such is the case where the asserted benefits of the statute are in fact illusory or relate to goals that evidence an impermissible favoritism of in-state industry over out-of-state industry." *Alaska Airlines,* 951 F.2d at 983.

Montana has a "legitimate interest in guarding against imperfectly understood environmental risks, despite the possibility that they might ultimately prove to be negligible." *Maine v. Taylor,* 477 U.S. at 148, 106 S.Ct. 2440. The state has a legitimate interest in preventing disease and hybridization in wildlife populations. The state has a legitimate interest in promoting fair chase hunting ethics and Montana's hunting heritage and legacy when mandated by popular vote or otherwise. The codification of I–143 is a permissible exercise of the state's legitimate interest in protection of animal life in the Montana. *See National Audubon Society v. Davis,* 2000 WL 33333865 at *10 (N.D.Cal.). *See also Baldwin v. Montana Fish & Game Commission,* 436 U.S. 371, 391, 98 S.Ct. 1852, 56 L.Ed.2d 354 (1978) ("protection of the wildlife of the state is peculiarly within the police power, and the state has great latitude in determining what means are appropriate for its protection"). Plaintiffs' claim under the Commerce Clause fails. At its core it is an argument about state policy and a disagreement with the consequences of voting on a hotly-contested public issue.

**2. Federal Equal Protection Clause**

The law banning fee killing of game farm animals does not infringe on a fundamental interest nor discriminate against a suspect class. The parties agree that appropriate test here is the rational basis test for Equal Protection. Under

that test, the law is valid if it is "rationally related to furthering a legitimate state interest." *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979). As discussed *supra,* the state has a legitimate interest in banning the killing of game farm animals for a fee. "States are not required to convince the courts of their legislative judgments. Rather 'those challenging the legislative judgment must convince the court that the legislative facts on which classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker'" *Clover Leaf Creamery,* 449 U.S. at 464, 101 S.Ct. 715 (*quoting Vance,* 440 U.S. at 111). Plaintiffs cannot invalidate the ban enacted by initiative "merely by tendering evidence in court that the legislature was mistaken." *See Clover Leaf Creamery,* 449 U.S. at 464, 101 S.Ct. 715. There are two legitimate policy arguments at issue here. But, absent a constitutional impediment, arguments about what policy is "better" after a popular election do not warrant judicial scrutiny unless an irrational clarification exists that fails to meet constitutional muster.

Banning fee killing is rationally related to promoting fair chase hunting. Plaintiff's claims under the federal Equal Protection Clause fail.

### 3. State Equal Protection

In contrast to their federal Equal Protection claims, Plaintiffs assert that under Montana's Constitution, their fundamental rights are infringed. If this is the case, they argue the state must show a compelling interest for the ban on fee killing. Plaintiffs argue that Article II, Section 3 of the Montana Constitution bestows a fundamental right upon Montana citizens to offer fee killing of game farm animals, and that I–143 interferes with Plaintiffs' right to operate their game farms as they see fit.

"The inalienable right to pursue life's basic necessities is stated in the Declaration of Rights and is therefore a fundamental right. While not specifically enumerated in the terms of Article II, section 3 of Montana's constitution, the opportunity to pursue employment is, nonetheless, necessary to enjoy the right to pursue life's basic necessities." *Wadsworth v. Montana,* 275 Mont. 287, 299, 911 P.2d 1165, 1172 (1996). In *Wadsworth,* the Montana Supreme Court held "that the opportunity to pursue employment, while not specifically enumerated as a fundamental constitutional right under Article II, section 3 of Montana's constitution is, notwithstanding, necessarily encompassed within it and is itself a fundamental right because it is a right 'without which other constitutionally guaranteed rights would have little meaning.'" *Id.* (*quoting Butte Community Union v. Lewis,* 219 Mont. 426, 430, 712 P.2d 1309, 1311–13 (1986) (holding that Montana's constitution does not create a right to welfare)).

Plaintiffs want to equate the opportunity to pursue employment, which is a fundamental right in Montana, with being able to run a business unfettered by state laws and regulations. The Montana Supreme Court specifically limited its holding in *Wadsworth* to exclude a fundamental right to a particular job: "while Article II, section 3 of Montana's constitution encompasses the right to the opportunity to pursue employment generally as a necessary incident of the fundamental right to pursue life's basic necessities, that provision of our constitution does not, without more, grant a right or property interest in any particular job or employment." *Id.* at 1172. No fundamental right is implicated by banning fee killing of game farm animals in Montana. Plaintiffs' state Equal Protection claim fails. To accept Plaintiffs' argument would be the equivalent of neutering the regulatory power of state government.

### 4. Federal Due Process

 According to Plaintiffs, their federal substantive due process claims should be subjected to a rational basis test. In the Ninth Circuit, "[s]ubstantive due process analysis has no place in contexts already addressed by explicit textual provisions of constitutional protection, regardless whether the plaintiff's potential claims under those amendments have merit." *Armendariz v. Penman,* 75 F.3d 1311, 1325–26 (9th Cir.1996) (*en banc*). The substantive due process claims here are really takings claims, properly brought under the protections of the Fifth Amendments Takings Clause. "[W]hen an explicit textual provision of the Constitution protects against the challenged government action, the claim must be analyzed under that specific provision alone and not under the more general guarantee of substantive due process." *Macri v. King County,* 126 F.3d 1125, 1128 (9th Cir.1997) (*citing Armendariz,* 75 F.3d at 1325–26). In my view Plaintiffs' substantive due process claims are more accurately described as takings claims. The claims are precluded from analysis under substantive due process.

### 5. State Due Process

 Plaintiffs argue that their state substantive due process claims should be subjected to a compelling state interest test because the claims implicate a fundamental right, and that the federal principal enunciated in *Armendariz* does not apply in Montana. The ban on fee killing of game farm animals does not implicate a fundamental right in Montana. *See* discussion, *supra.* Further, Montana does have a legitimate interest in banning fee killing of game farm animals, and application of a rational basis test indicates that the ban is rationally related to a legitimate state interest. *See* discussion, *supra.* Under a rational relationship test, Plaintiffs' substantive due process claims fail.

Although the Montana Supreme Court has not addressed whether it would adopt the exclusion of substantive due process claims delineated in *Armendariz,* I believe that the Montana Supreme Court would adopt the exclusion as a proper interpretation of application of Montana constitutional jurisprudence. Because Plaintiffs' claims fail under a rational basis test, I need not apply the *Armendariz* exclusion in this case.

### C. Irreparable Injury

 Plaintiffs argue that the loss of fundamental rights is an irreparable injury and should trigger injunctive relief. Further, the loss of these fundamental rights will cause Plaintiffs economic hardship. While some parts of this argument may be so, fundamental rights are not implicated here. *See* discussion, *supra.* Plaintiffs' Complaint is mostly, though not exclusively, economic. They argue that they will lose fee killing contracts this year; suffer injury to their reputations and goodwill; lose referral clients; as well as being unable to make loan payments.

 Purely monetary injuries are not normally considered irreparable. *Coliseum,* 634 F.2d at 1202. When loss of goodwill and reputation attached to a profitable venture's affects the potential revenue of the venture, it is ordinarily considered a monetary injury and not an irreparable injury. *Id.* Because the irreparable injury alleged is almost exclusively economic in nature, injunctive relief is not a proper remedy.

### D. Balance of Hardships

 Plaintiffs argue that they have raised serious legal questions they could proceed upon and that the balance of hardships tips in their favor, so injunctive relief is proper. This argument is predicated on the notion that the State will not be

harmed by the injunctive relief requested, since all Plaintiffs ask is to be able to sell contracts to people to kill their game farm animals. The State responds that injunctive relief would diminish its ability to protect wildlife in Montana due to the risk of disease and hybridization posed by game farm animals, and the loss of habitat for wildlife. The State goes on to argue that Montana's hunting heritage and fair chase hunting ethic will be harmed if fee killings are allowed on game farms. While the effect resumption of fee killing in itself would have on the risk of disease and hybridization is negligible, the effect that resumption of the fee killing on Montana's hunting heritage and fair chase hunting ethic is substantial.

Plaintiffs argue that the State is thin on factual justification for these assertions. However the proper test is whether these assertions are rational in themselves. It is rational to claim that fee killing would have a negative effect on Montana's fair chase hunting ethic. Montana has a legitimate interest in protecting its hunting heritage. Hunting licenses and associated expenditures contribute to local economies and also provide a significant amount of revenue that the state uses for wildlife management.

The public interest here is not advanced by granting Plaintiffs' request for injunctive relief to authorize continued fee killing. The citizens of Montana enacted I–143 by a majority vote. Plaintiffs argue that voter turnout was poor and that a majority of citizens in most counties in Montana voted against passage of I–143. This belies the point that a majority of Montanans voted in Favor of I–143 and amounts to a structural argument against the initiative process. The argument on structure must be reserved for the appropriate body politic, not the Court. The public has indicated directly that its inter-

est is to stop fee killing of game farm animals.

The balance of hardships does not tip in Plaintiffs' favor. Injunctive relief is not appropriate here.

Wherefore IT IS HEREBY ORDERED that Plaintiffs' Motion for a Preliminary Injunction (docket # 14) is DENIED.

The Court will address Defendants' Motion to Dismiss by separate Order.