**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROBERT SPOKLIE, Individually;
SPOKLIE ENTERPRISES, L.L.C., a
Montana Limited Liability
Company; KIM J. KAFKA, Esq.;
CINDY R. KAFKA, individually, and
as husband and wife, and as
members of Diamond K Ranch
Enterprises, L.L.C.; DIAMOND K
RANCH ENTERPRISES, LLC, a
Montana Limited Liability
Company, on behalf of themselves
and others similarly situated,
     *Plaintiffs-Appellants,*

    v.

STATE OF MONTANA; STATE OF
MONTANA, DEPARTMENT OF FISH,
WILDLIFE AND PARKS; JEFF
HAGENER, Director of the Montana
Department of Fish, Wildlife and
Parks, in his individual capacity,
     *Defendants-Appellees.*

SPORTSMEN FOR I-143, MONTANA
WILDLIFE FEDERATION,
     *Intervenor-Appellee.*

No. 03-35857

D.C. No.
CV-02-00102-SEH

OPINION

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted
November 1, 2004—Seattle, Washington

6911

Filed June 13, 2005

Before: Arthur L. Alarcón, William A. Fletcher, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge William A. Fletcher

**COUNSEL**

John E. Bloomquist and Suzanne Taylor, Doney Crowley Bloomquist UDA, Helena, Montana, Sarah K. McMillan, Tuholske Law Office, Missoula, Montana, for the plaintiffs-appellants.

Robert N. Lane, Fish Wildlife & Parks, Helena, Montana, Mike McGrath, Office of the Attorney General, Helena, Montana, for the defendants-appellees.

**OPINION**

W. FLETCHER, Circuit Judge:

Appellants Kim J. and Cindy R. Kafka, Diamond K Ranch Enterprises L.L.C., Robert Spoklie, and Spoklie Enterprises L.L.C. challenge a Montana ballot initiative, Proposition I-143, on federal and state constitutional grounds. We affirm the district court's denial of a motion to stay proceedings in the federal court pursuant to *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941). We hold that the Kafkas' claims against the State of Montana and the Montana Department of Fish, Wildlife and Parks are precluded by the final judgment previously entered in their parallel state court case. Finally, we affirm the district court's dismissal of all remaining claims.

## I. Background

Appellants Kim J. Kafka, Cindy R. Kafka, and Diamond K. Ranch Enterprises (collectively "the Kafkas"), and Robert Spoklie and Spoklie Enterprises (collectively "Spoklie"), formerly owned and operated "alternative livestock" ranches in Montana, on which they raised elk, deer, bighorn sheep, mountain goats, and bison. Montana defines alternative livestock as "privately owned caribou, white-tailed deer, mule deer, elk, moose, antelope, mountain sheep, or mountain goat[s] indigenous to the state of Montana, . . . privately owned reindeer, or any other cloven-hoofed ungulate as classified by the department." Mont. Rev. Code § 87-4-406(1). Kim and Cindy Kafka own one alternative livestock ranch, the Diamond K Ranch. Robert Spoklie owns one alternative livestock ranch, Spoklie Enterprises, and is the co-owner of another, Spoklie Elk Ranches. Until the passage of Proposition I-143 ("I-143"), the income from the Kafka and Spoklie ranches came primarily from "fee shooting," a practice by which members of the public, many of them from out of state, paid to shoot a pre-selected animal on the ranch under the supervision of a guide.

In October 1999, an animal on a Montana game farm ranch was diagnosed with chronic wasting disease. Concerned about the risk of the disease spreading among stocks of alternative livestock, the legislature imposed a moratorium on applications for new alternative livestock ranches in May 2000. Meanwhile, opponents of fee shooting collected enough signatures to qualify I-143 for the November 2000 statewide ballot. Montana voters passed I-143 on November 7, 2000. It became effective immediately.

I-143 changed Montana law applicable to alternative livestock ranches in three major ways. First, it prohibited operating an alternative livestock ranch without a license obtained prior to November 7, 2000, and it prohibited the issuance of new licenses. Mont. Code Ann. § 87-4-407(1). Second, it pro-

hibited the transfer of "[an] alternative livestock ranch license for a specific facility." *Id.* at § 87-4-412(2). Finally, it provided that an alternative livestock licensee "may not allow the shooting of game animals or alternative livestock . . . for a fee or other remuneration on an alternative livestock facility." *Id.* at § 87-4-414(2). However, existing holders of alternative livestock licenses were permitted to "acquire, breed, grow, keep, pursue, handle, harvest, use, sell, or dispose of the alternative livestock and their progeny in any quantity and at any time of year." *Id.*

Appellants filed several lawsuits challenging I-143 in federal and state court. In February 2001, the Kafkas sued Jeff Hagener, Director of the Montana Department of Fish, Wildlife and Parks ("DFWP"), and Marc Bridges, Executive Officer of the Montana Department of Livestock, in their individual and official capacities, in federal district court. They sought a preliminary injunction against enforcement of I-143 on federal and state constitutional grounds. The district court denied the injunction on October 5, 2001. *See Kafka v. Hagener*, 176 F. Supp. 2d 1037 (D. Mont. 2001). The Kafkas voluntarily dismissed this suit on November 7, 2001.

On April 8, 2002, the Kafkas sued the State of Montana and DFWP in Montana state court on several of the same federal and state constitutional grounds raised in their federal suit, as well as on several additional federal and state grounds. In late 2002, the state trial court dismissed all claims other than the takings claims under the federal and the state Constitutions. *Kafka v. Montana Dept. of Fish, Wildlife and Parks*, DV-02-059 (October 21, 2002). [SER 102-113] On February 8, 2005, the state court dismissed the Kafkas' federal and state takings claims. *Kafka v. Montana Dep't of Fish, Wildlife, and Parks*, DV 02-059 (Feb. 8, 2005). [Feb. 17, 2005, Rule 28(j) letter]

On September 28, 2001, Spoklie sued the DFWP in state court, challenging its interpretation of I-143. The state court

granted Spoklie a preliminary injunction, but the Montana Supreme Court reversed. *Spoklie v. Mont. Dep't of Fish, Wildlife & Parks*, 56 P.3d 349 (Mont. 2002). Spoklie then amended his state court complaint to include federal and state constitutional claims. So far as we are aware, no final judgment has been entered in that suit.

On November 6, 2002, the Kafkas and Spoklie filed this action in federal district court against the State of Montana, DFWP, and Jeff Hagener, Director of DFWP, in his individual capacity, challenging I-143 under the federal and state Constitutions. Shortly thereafter, the Kafkas and Spoklie moved to stay their federal action pursuant to the *Pullman* abstention doctrine, pending resolution of their state-court suits. On December 30, 2002, the district court denied the motion to stay. On September 11, 2003, the district court dismissed appellants' claims in their entirety. They timely appealed.

## II.　*Pullman* Abstention

**[1]** Before reaching the merits, we consider Appellants' argument that the district court should have abstained under *Pullman*. *Abstention* under *Pullman* is "an equitable doctrine that allows federal courts to refrain from deciding sensitive federal constitutional questions when state law issues may moot or narrow the constitutional questions." *San Remo Hotel v. City and County of San Francisco*, 145 F.3d 1095, 1104 (9th Cir. 1998). *Pullman* abstention is appropriate when: "(1) the federal plaintiff's complaint requires resolution of a sensitive question of federal constitutional law; (2) the constitutional question could be mooted or narrowed by a definitive ruling on the state law issues; and (3) the possibly determinative issue of state law is unclear." *Id.* Although it is unusual for the party that has chosen the federal forum to invoke the abstention doctrine, no bar exists to either party doing so. *Id.* at 1105. We review de novo the question of whether the

requirements for *Pullman* abstention are met. *Fireman's Fund Ins. Co. v. City of Lodi*, 302 F.3d 928, 939 (9th Cir. 2002).

**[2]** We may make short work of Appellants' argument under *Pullman.* We hold that the third element of the test, *supra*, has not been satisfied, which makes it unnecessary to address the first and second elements. When the district court denied the motion to stay under *Pullman*, the Montana trial court in the Kafkas' case had already ruled adversely on most of their state law claims, and the federal district court in the Kafkas' case had ruled adversely on one of them. *Kafka*, 176 F. Supp. 2d at 1043 (holding that the fee-shooting ban did not implicate any fundamental rights under the Montana Constitution). Further, the Montana Supreme Court in Spoklie's case had already sustained DFWP's interpretation of I-143. *See Spoklie*, 56 P.3d at 356. Under these circumstances, the district court was entirely justified in concluding that Appellants had not shown that state law was unclear.

### III.   Preclusion Against the Kafkas

We next consider whether the Kafkas' claims against the State of Montana, DFWP, and Jeff Hagener are barred by claim preclusion. The Kafkas have brought two earlier suits against these defendants, one in state court and one in federal court.

#### A.   The Kafkas' State Court Suit: Preclusion of Claims Against the State of Montana and DFWP

**[3]** When the district court decided this case, no final judgment had been entered in the Kafkas' state court suit. However, the state trial court has now entered a final judgment dismissing their suit in its entirety. *Kafka v. Montana Dep't of Fish, Wildlife and Parks*, DV-02-059 (February 8, 2005). In determining the preclusive effect of the Montana judgment, we apply Montana law. 28 U.S.C. § 1738. The final judgment of a trial court is entitled to preclusive effect. *Hollister v. For-*

*sythe*, 918 P.2d 665, 667 (Mont. 1996); *Meagher County Newlan Creek Water Dist. v. Walter*, 547 P.2d 850, 852 (Mont. 1976). Under Montana preclusion law, "claims litigated in a former action as well as . . . claims which might have been litigated" are barred. *Balyeat Law, P.C. v. Hatch*, 942 P.2d 716, 717 (Mont. 1997). "A resolved claim will be res judicata as to subsequent claims if: (1) the parties are the same; (2) the subject matter is the same; (3) the issues are the same and relate to the same subject matter; and (4) the capacities of the persons are the same in reference to the subject matter and issues." *Id.*; *see also Loney v. Milodragovich, Dale & Dye, P.C.*, 905 P.2d 158, 161 (Mont. 1995); *Troutt v. Colorado Western Ins. Co.*, 246 F.3d 1150, 1156 (9th Cir. 2001).

**[4]** All four requirements are easily met here. First, the defendants in both cases are the State of Montana and DFWP. Second, the subject in both cases is I-143. Third, the issue in both cases is the legality of I-143. The Kafkas have added a federal Commerce Clause claim to this suit, but this claim arises out of the same subject and "might have been litigated" in their state court suit. Finally, the Kafkas are suing the same state defendants.

The Kafkas nevertheless contend that the state trial court's dismissal of their takings claims should not preclude their federal takings claim. They point out that the United States Supreme Court has granted certiorari in *San Remo Hotel, L.P. v. San Francisco City and County*, 364 F.3d 1088 (9th Cir. 2004), in which we held that issues decided by a state court in resolving a state takings claim are preclusive in a later federal suit asserting an "equivalent" federal takings claim. The Kafkas ask that we defer decision on claim preclusion of their federal takings claim pending the Supreme Court's decision in *San Remo Hotel*.

**[5]** Whatever the Supreme Court might decide in *San Remo Hotel*, the case is inapposite for two reasons. First, the state court in *San Remo Hotel* decided only a state law takings

claim. In this case, by contrast, the state court decided both state and federal takings claims. Second, the question in federal court in *San Remo Hotel* was issue preclusion. In this case, by contrast, the question is claim preclusion. In this case, the Kafkas brought their federal takings claim directly in state court, and the state court entered a final judgment rejecting it. *Cf. England v. Louisiana State Bd. of Med. Examiners*, 375 U.S. 411, 415 (1964). We are precluded by Montana law from redeciding that claim.

### B. The Kafkas' Federal Court Suit: No Preclusion of Claim Against Hagener

**[6]** The Kafkas brought suit in federal district court against Jeff Hagener, the Director of DFWP, in both his individual and official capacities, asserting that I-143 violated both state and federal law. The district court denied a preliminary injunction on October 5, 2001. On November 7, 2001, the Kafkas voluntarily dismissed their complaint. It is not clear from the record before us whether this dismissal was with or without prejudice. We are therefore unable to conclude on this record that the dismissal of the district court against Hagener precludes claims against him in the case before us.

### IV. Spoklie's Claims against the State of Montana and DFWP

The district court dismissed Spoklie's federal takings claim against the State of Montana and DFWP on the ground that it was not ripe, and dismissed his remaining claims pursuant to Federal Rule of Civil Procedure 12(b)(6). We review de novo a dismissal on ripeness grounds. *Citizens for Better Forestry v. United States Dep't of Agric.*, 341 F.3d 961, 969 (9th Cir. 2003). We review de novo a dismissal for failure to state a claim pursuant to Rule 12(b)(6). *Decker v. Advantage Fund, Ltd.*, 362 F.3d 593, 595-96 (9th Cir. 2004).

## A.   Eleventh Amendment

**[7]** Spoklie has sued the State of Montana and DFWP both for damages and for declaratory and injunctive relief. DFWP is a department of the State, and is the equivalent of the State for purposes of the Eleventh Amendment. *Austin v. State Indus. Ins. Sys.*, 939 F.2d 676, 677 (9th Cir. 1991). In his brief for the Appellees, the State Attorney General asserts that the State and DFWP are immune from an unconsented suit for damages, but "concede[s] that the Eleventh Amendment does not bar Plaintiffs' claims for prospective declaratory and injunctive relief under [*Ex parte Young*, 209 U.S. 123 (1908)]." We treat the Attorney General's "concession" as a waiver of the defense that Spoklie should not have named the State and DFWP as parties in seeking relief under *Ex parte Young*. *See Austin*, 939 F.2d at 677 (a state may consent to a suit that would otherwise be barred by the Eleventh Amendment).

## B.   Spoklie's Federal Claims

### 1.   Takings

**[8]** The district court dismissed Spoklie's federal takings claim for lack of ripeness, noting that he had failed to show that I-143 deprived him of all economically viable use of his property. A federal takings claim is not ripe until a litigant has "[sought] compensation through the procedures the State has provided for doing so." *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194 (1985). This requirement applies to facial challenges as well as to as-applied challenges. *Southern Pac. Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 505-06 (9th Cir. 1990) ("[A] claim alleging that mere enactment of a statute effects an unconstitutional taking is unripe unless and until it is known what, if any, compensation is available.") Spoklie has filed suit in state court challenging I-143 under the federal and state takings clauses, but so far as we are aware, no decision has been

rendered in that suit. Until the state court has finally ruled on the state takings claim, the federal takings claim is not ripe. *See Williamson County*, 473 U.S. at 195.

It is true that we have previously held that one aspect of a facial takings claim is exempt from the *Williamson County* ripeness requirement. In *Sinclair Oil Corp. v. County of Santa Barbara*, 96 F.3d 401 (9th Cir. 1996), we observed that a plaintiff could bring a takings claim under either of two theories. Either a plaintiff could show that the challenged land use restriction deprived him of all economically viable use of his land, or he could show that the action did not "substantially advance a legitimate state interest." *Id.* at 406-07. We found that, while the first showing required that the plaintiff comply with the ripeness criterion of *Williamson County*, the second showing did not.

**[9]** Spoklie's takings claim appears to be based in part on the theory that I-143 does not substantially advance a legitimate state interest. However, to the extent Spoklie's takings claim is premised on this theory, it must be dismissed. In *Lingle v. Chevron U.S.A. Inc.*, No. 04-163, 2005 WL 1200710 (May 23, 2005), at *14, the Supreme Court has just disavowed the use of the "substantially advances" test in takings claims, holding that "the 'substantially advances' formula is not a valid takings test, and . . . it has no proper place in our takings jurisprudence." To the extent that Spoklie's takings claim is premised on an asserted failure of I-143 to satisfy the "substantially advances" test, *Lingle* requires that his claim be dismissed with prejudice. We affirm the district court's dismissal on this ground. *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 926 (9th Cir. 2003) (per curiam) (a court may affirm on any ground evident from the record).

Because we hold that Spoklie has failed to establish that there has been a taking, we do not need to address the question whether a state may be sued for damages under the Takings Clause of the Fifth Amendment in the absence of its

consent. *Compare First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 316 n.9 (1987) (finding that, notwithstanding "principles of sovereign immunity," the Constitution "dictates" a damages remedy in takings cases, but not specifically addressing whether suits against states for damages may be maintained in takings cases consistent with the Eleventh Amendment), *with Broughton Lumber Co. v. Columbia River Gorge Comm'n*, 975 F.2d 616 (9th Cir. 1992) (applying the Eleventh Amendment to a takings claim against the state).

## 2.   Retroactivity

**[10]** The district court correctly dismissed Spoklie's claim that I-143 is invalid because it is impermissibly retroactive legislation. The Supreme Court has noted that "the presumption against retroactive legislation is deeply rooted in our jurisprudence" and "finds expression in several provisions of our Constitution." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265-66 (1994). The relevant provision in this case is Art. I, § 10, cl. 1, which provides that "[n]o State shall . . . pass any . . . ex post facto Law." However, "[t]he Constitution's restrictions . . . are of limited scope," *id.* at 267, and "[a] statute does not operate 'retrospectively' merely because it . . . upsets expectations based in prior law." *Id.* at 269. Instead, the relevant question is "whether the new provision attaches new legal consequences to events completed before its enactment." *Id.* at 270. Under this standard, many statutes that "unsettle expectations and impose burdens on past conduct" are nonetheless "uncontroversially prospective." *Id.* at 269 n.24. For example, a ban on gambling is not impermissibly retrospective simply because it "harms the person who had begun to construct a casino before the law's enactment." *Id.*

Spoklie argues that I-143 has had impermissible retroactive effect because it has caused him to lose "vested rights" in his animals, ranches, alternative livestock licenses, and business goodwill. While these business losses are potentially relevant

to Spoklie's takings claim, they provide no basis for arguing that the state's abolition of formerly legal fee shooting practices is impermissibly retroactive. A state may outlaw a formerly legal business even if it causes hardship to those who relied on the earlier law. *See Mugler v. Kansas*, 123 U.S. 623, 669 (1887) (Kansas ban on the sale of beer was constitutional even though Kansas had allowed the sale of beer at the time the plaintiffs constructed their breweries). Indeed, Montana law specifically warns Montana citizens not to rely on the expectation that the law will never be changed. Mont. Code Ann. § 1-2-110 ("Any statute may be repealed at any time except when it is otherwise provided therein. Persons acting under any statute are deemed to have acted in contemplation of this power of repeal.").

### 3.   Substantive Due Process

**[11]** The district court correctly dismissed Spoklie's substantive due process claim, which is based on his theory that I-143 is an "irrational and arbitrary" law. Substantive due process provides no basis for overturning validly enacted state statutes unless they are "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926). If the legislature "could have concluded rationally" that certain facts supporting its decision were true, courts may not question its judgment. *Vance v. Bradley*, 440 U.S. 93, 111 (1979) (internal citations and quotation marks omitted).

The justifications the State has offered for I-143 far exceed what is necessary to meet this minimal standard. Voters who supported I-143 could rationally have concluded that the proposition would promote environmentally sound resource management by encouraging sport hunting in preference to fee hunting, and that it would prevent transmission of disease from the interbreeding of game farm and wild populations. Supporters could also rationally have concluded, as advocates

of I-143 urged in their pre-election arguments, that fee hunting created an "unacceptable, bankrupt image of hunting portrayed by the paid shooting of captive animals," thereby threatening the state's "strong economy based on the public pursuit and enjoyment of wild, free-ranging public wildlife." None of these rationales is clearly arbitrary or pretextual, and all implicate issues of safety, health, and welfare that are within a state's legitimate police power. *See Euclid*, 272 U.S. at 395.

### 4.   Commerce Clause

**[12]** The district court properly rejected Spoklie's argument that I-143 places an unconstitutional burden on interstate commerce. When a state statute affects interstate commerce, courts assess whether the statute "regulates even-handedly to effectuate a legitimate local public interest" and whether "its effects on interstate commerce are only incidental." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). If so, the statute "will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Id.* States enacting statutes affecting interstate commerce "are not required to convince the courts of the correctness of their legislative judgments." *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464 (1981). Instead, "those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." *Id.* (citation and internal quotation marks omitted).

As discussed above, a rational legislator could have found that I-143 serves a legitimate public interest. Spoklie concedes that I-143 does not discriminate overtly against interstate commerce, and he has not plausibly alleged that I-143 imposes more than incidental burdens on interstate commerce. The only basis for Spoklie's assertion that I-143 unduly burdens interstate commerce is his claim that fee shooting pri-

marily attracts out-of-state residents. That a particular service or recreation appeals to out-of-staters, however, does not impose on states an obligation to permit it.

Spoklie argues that a state law whose actual goal is economic protectionism is subject to a "virtually per se rule of invalidity." *See Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978). However, this rule applies only when *no* legislative objectives other than protectionist ones are "credibly advanced" or where legislation results in "patent discrimination against interstate trade." *Id.* Here, appellees have advanced several credible non-protectionist motives, while appellants have asserted no plausible protectionist ones. Indeed, to the extent that fee hunting is particularly popular with out-of-staters, I-143 removes one way in which Montana businesses can attract out-of-state dollars. It thus accomplishes virtually the opposite of economic protectionism. *See Clover Leaf*, 449 U.S. at 473 n.17 ("The existence of major in-state interests adversely affected by the [challenged statute] is a powerful safeguard against legislative abuse.")

## C. Spoklie's State Claim

**[13]** Spoklie claims that I-143 violates his property rights under Article II, section 3, of the Montana Constitution. However, the Eleventh Amendment prevents him from asserting that claim in federal court. To the extent he seeks damages from the State and from DFWP, the Eleventh Amendment stands directly in his way. To the extent that he seeks declaratory and injunctive relief under *Ex parte Young*, he is twenty-one years too late. In 1984, in *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 104 (1984), the Supreme Court announced that *Ex parte Young* allows prospective relief against state officers only to vindicate rights under federal law. Since Spoklie seeks to vindicate an asserted right under state rather than federal law, *Pennhurst* dictates that this claim must be dismissed.

## V.   Appellants' Claim against Hagener

Appellants sue Jeff Hagener, Director of DFWP, in his individual capacity, alleging that he "acted under color of state law to deprive Plaintiffs of their constitutional rights secured by the Constitution of the United States" including their federal rights of due process, protection against retrospective laws, and protection against takings of private property without just compensation. To establish that a state official is personally liable in an action under 42 U.S.C. § 1983, a plaintiff must show that "the official, acting under color of state law, caused the deprivation of a federal right." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). State officials have qualified immunity from civil liability under § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Jensen v. City of Oxnard*, 145 F.3d 1078, 1085 (9th Cir. 1998) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

**[14]** Appellants have failed to show that any of their federal constitutional rights have been violated. Since their § 1983 claim against Hagener is premised on the argument that I-143 violates their federal constitutional rights, that claim necessarily fails. We therefore affirm the district court's dismissal of Appellants' § 1983 claim against Hagener.

For the foregoing reasons, the district court's dismissal of all of Appellants' claims is AFFIRMED.